Railroad *v.* Kyle.

ROGERSVILLE & JEFFERSON RAILROAD COMPANY *v.* W. C. KYLE *et al.*

1. RAILROAD. *Effect of sale of, to enforce State's lien.* The effect of the sale of a delinquent railroad at the suit of the State to enforce its statutory lien, was to transfer the title of the road and its appurtenances and corporate franchises to the purchaser, and, unless the company was the purchaser, to dissolve the corporation.

2. CORPORATION, DISSOLVED. *Suit by.* A suit in the name of a corporation thus dissolved, brought more than five years after dissolution, cannot be maintained unless it appear that, under Code, sec. 1496, the chancellor has granted further time for closing the business of the dissolved corporation.

FROM HAWKINS.

Appeal from the Chancery Court at Rogersville.   H. C. SMITH, Ch.

W. P. GILLENWATERS for complainants.

KYLE & McDERMOTT for defendants.

McFARLAND, J., delivered the opinion of the court.

This bill was filed on the 14th of November, 1879, in the name of the "Rogersville & Jefferson Railroad Company," and in the name of the State for the use of said corporation, to hold W. C. Kyle, former president of the company, liable for large sums of money alleged to have been received by him on behalf of

the company, between the years 1865, and October, 1867, and also for other large sums alleged to have been received by him while acting as receiver of the road, between the years 1870 and 1873; all of which it is charged, were unaccounted for. The other defendants are either the sureties of Kyle, on his bond as receiver, or persons to whom it is alleged his property has been fraudulently conveyed.

The Rogersville & Jefferson Railroad Company was one of that class known as "the delinquent railroad companies," that is to say, one of the companies to whom the State had loaned its bonds, retaining for security a lien on the road and its property. And the company having failed to meet the interest on the bonds loaned to it in accordance with the laws under which the loan was made; the road, with all its fixtures, rolling-stock, etc., together with the franchises of the company, has been sold under proceedings authorized by law instituted in the chancery court at Nashville, since which sale the original company has ceased to have any interest in the road.

In the aspect the case now comes before us it is conceded in argument that only two questions are presented for our consideration. And first, whether, at the commencement of this action, "The Rogersville & Jefferson Railroad Company" had a corporate existence so as to authorize the prosecution of this suit in its name? This question was properly made by a plea in abatement setting forth the facts upon which the question arises.

The second question is, whether or not the right

Railroad *v.* Kyle.

of action arising upon the facts set forth in this bill passed to the purchaser of the road and is now vested in the present owner, or does it remain with the original corporation?

The special chancellor dismissed the bill upon the latter ground, but it is conceded that if either of these questions be decided for the defendants, the decree should be affirmed, otherwise it should be reversed and the cause remanded for further hearing by the chancellor upon the merits.

And first, did the Rogersville & Jefferson Railroad Company have a corporate existence for the purpose of instituting and prosecuting this suit? The sale of the road under the proceedings referred to occurred on the 20th of March, 1872. It was purchased by certain individuals, but by their direction and at their request, the title was by the decree of the court vested in the "East Tennessee, Virginia & Georgia Railroad Company," another corporation. This latter company subsequently sold and by deed conveyed all the right and title acquired under its purchase to one W. P. Elliott, and he in turn sold and conveyed to H. M. Aiken, who has since owned and operated the road.

The proceedings instituted in the chancery court at Nashville, under which this and other roads were sold, were specially authorized by certain acts of the Legislature, vesting that tribunal with exclusive jurisdiction to determine all questions that might arise touching the rights of the State, and also of the stockholders, bondholders, creditors and others; to define what should be the rights of the purchasers, and what should be

the reserved rights of the companies, stockholders and others, as against the purchasers after the sale.

It was accordingly adjudged, among other things, that the lien of the State was superior to all other claims whatsoever, and that the lien extended to the road its rolling-stock and other property, rights, privileges and franchises, and that upon a sale to any one other than the original company, said companies and their stockholders would cease to have any right, legal or equitable, in the property rights or franchises so sold.

Passing for the present the question whether this sale transferred to the purchaser *debts due to the corporation,* we will consider whether the sale had the effect to terminate the corporate existence so as to prevent a suit in the corporate name to collect the debt. If it had been merely a sale of the stock owned by the stockholders, the corporate existence would not have been thereby terminated, even though the stock had all been purchased by one person, and even though this would have practically operated as an entire change in the beneficial ownership. But the effect of the sale under the proceedings referred to, was to transfer the title of the road and its appurtenances with the franchises granted by the charter for operating the same *from* the "Rogersville & Jefferson Railroad Company," and vest the same in the purchaser, the purchaser being in law another person. It is clear, therefore, that the purchaser is not a continuation of the original corporation, and so we have virtually held at the present term in respect to this sale in the case of *Ragan & Buffet*

v. *Aiken.* After the sale the original corporation ceased to be the owner of the road, or any of its tangible property or appurtenances. The stockholders no longer owned any stock in the company, for the lien of the State extended to the stock, and it was expressly adjudicated in the case referred to, that upon a sale to any one other than the original company, that the stockholders should cease to have any interests. The franchises and privileges . granted by the charter no longer remained with the corporation, for these, by the express terms of the decree, passed to the purchaser. Hence, the corporation no longer owned any road, or any part of the tangible property appurtenant thereto, its stockholders no longer owned any stock in the company. They could not acquire other stock, or construct another road, for the benefits of the charter were transferred from them to the purchaser. For all the practical purposes of its original creation, the corporation, therefore, ceased to exist. A corporation possessing neither property, rights or franchises, is scarcely conceivable. "A corporation, however, is not dissolved by mere non-user or assignment to others in whole or in part of its powers, franchises and privileges, unless all the corporate property has been appropriated to the payment of its debts": Code, sec. 3431. "And," the section continues, "any creditor or stockholder may file a bill under the provisions of the chapter, have the property applied to the payment of the debts, and the surplus divided among the stockholders." Whether this means that in such case the corporation may still continue to act as such and sue in its own name, with-

out limit of time, or merely that it is not dissolved so as to defeat all rights of the creditors or stockholders to reach the assets, need not be considered. Inasmuch, however, as the remedy specially pointed out in such cases is by bill in equity by a creditor or stockholder, the latter construction might be given to it. But independent of this statute the remedy in equity to administer the assets of a dissolved corporation is ample and clear: See *State and Watson,* v. *Bank of Tennessee,* 5 Baxt., 101.

But it will be observed that the above section only in terms applies to cases where the powers, franchises and privileges of the corporation have ceased to be used or been transferred to another, leaving at least some part of the property unappropriated to the debts.

In the present case not only have the powers, franchises and privileges of the corporation been transferred to another, but all the corporate property and the right of the stockholders therein, unless it be this claim in the nature of a debt due to the corporation, and it is not alleged that any debts remain owing by the corporation—nor is this a bill by either a creditor or stockholder under the provisions of the Code referred to, to collect and administer the assets of the corporation as therein provided.

If anything remains to the original corporation, it is merely the right to collect the sums alleged to be due to Kyle in the nature of a debt due to the corporation, and for this purpose to institute a suit in the corporate name.

Upon the assumption that this debt did not pass

to the purchaser, but remained with the corporation, it may readily be conceded that a court of equity could grant relief at the suit of a creditor or stockholder.

The question how long a dissolved corporation may yet be continued in existence merely for the purpose of prosecuting and defending suits is provided for in another part of the Code.

All corporations whose charters expire, or are annulled or dissolved, continue to exists as corporate bodies for the term of five years for the purpose of prosecuting and defending suits, settling up their business, disposing of their property and dividing the capital stock, but not for the purpose of continuing the corporate business: Code, sec. 1493. At the dissolution, the *managers of the business at the time,* by whatever name known, are trustees of the stockholders and creditors, unless some other persons are appointed trustees by the General Assembly, or by a competent court, and are authorized to settle the affairs of the corporation: Code, sec. 1494.

*Such persons,* that is, the acting managers of a corporation at the time of the dissolution, and who thereby become trustees under the above provisions of the Code, have the right to sue for and recover the debts of the dissolved corporation in its corporate name, and are jointly and severally responsible to its creditors to the extent of the property which may come into their hands: Code, sec. 1495. And, upon application to a chancellor, and making a proper case, the power of such trustee or receiver may be extended beyond the

period of five years for the purposes named: Code, sec. 1496.

From these sections it is clear that a suit may be brought and prosecuted in the name of a dissolved cor-poration for the purpose of collecting a debt due to it, for the period of five years after dissolution. The persons authorized to thus use the corporate name are the managers of its business at the time of dissolu-tion by whatever name known who thereby became trustees, or a trustee or trustees duly appointed by the General Assembly or a competent court. Such trus-tees have the power to thus use the corporate name for the period of five years, or to have the time ex-tended beyond that period under section 1496 of the Code. Unless this be done their powers terminate at the end of five years from dissolution, and no one else would be authorized to sue in the corporate name.

Beyond the provisions of this statute there is no modification of the technical common law rule that upon dissolution of a corporation all suits by or against it abate: 5 Baxt., 101. But as we have seen, this does not deprive the creditor or stockholder of his remedy in his own name in equity.

The question who authorized the institution of the present suit in the corporate name was not made in the court below by rule upon the solicitor to show his authority, but it appears that the bill was filed more than five years after the sale of the road and its franchises and its consequent dissolution, and it not being alleged that the powers of those persons who, under the above provisions of law became trustees,

were extended beyond that period, it results that they were not thus authorized to sue in the corporate name, and of course no one else had the authority.

The corporation was, in the view we have taken, dissolved upon the sale in 1872; leaving, so far as appears, at most, only this debt due to it, and we hold that so far as appears, no one was authorized to institute the present suit in the corporate name, and the remedy, if any, would be in the name of a creditor or stockholder.

This relieves us from the necessity of determining whether this claim or debt, with the right to sue for its collection, passed to the purchaser at the sales referred to, a question about which there may be some doubt.

The decree dismissing the bill will be affirmed with costs.